DECISION
{¶ 1} Relator, Cassens Transport Company, has filed an original action in mandamus requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its award of R.C. 4123.56(A) working wage-loss compensation starting December 13, 2002, and to enter an order denying the award.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering the commission to vacate its September 11, 2003 order, and to enter a new order that adjudicates the application for wage-loss compensation based upon the formula found at Ohio Adm. Code4125-1-01(F)(3)(b). (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision and, based upon an independent review of the record, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is granted to the extent it orders the commission to vacate its September 11, 2003 order and, in a manner consistent with the magistrate's decision, enter a new order that adjudicates the application for wage-loss compensation.
Writ of mandamus granted.
Lazarus and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Cassens Transport Company, :
 Relator, :
v. : No. 04AP-16
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Ludwig J. Hornis, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on November 18, 2004 Schottenstein, Zox Dunn, and Corey V. Crognale, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
Pencheff Fraley Co., L.P.A., and Joseph A. Fraley, for respondent Ludwig J. Hornis.
 IN MANDAMUS {¶ 4} In this original action, relator, Cassens Transport Company ("Cassens"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of R.C. 4123.56(A) working wage loss compensation starting December 13, 2002, and to enter an order denying the award.
Findings of Fact:
 {¶ 5} 1. On September 12, 2000, Ludwig J. Hornis ("claimant") sustained an industrial injury while employed as a driver — car hauler for Cassens, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "sprain lumbar region; herniated disc L4-5; aggravation of pre-existing dysthymic disorder," and is assigned claim number 00-529392.
 {¶ 6} 2. At the time of his industrial injury, claimant was earning approximately $45,000 annually through his employment at Cassens.
 {¶ 7} 3. On May 6, 2001, claimant underwent low back surgery performed by Gale A. Hazen, M.D.
 {¶ 8} 4. On May 15, 2002, claimant moved for nonworking wage loss compensation beginning April 22, 2002. The motion was supported by a C-140 report from Dr. Hazen who indicated that in an eight-hour day claimant can sit for two hours, stand for two hours, and walk for two hours.
 {¶ 9} 5. Following a September 30, 2002 hearing, a district hearing officer ("DHO") issued an order denying nonworking wage loss compensation beginning April 22, 2002 through the date of the hearing. Claimant administratively appealed the DHO's order.
 {¶ 10} 6. Following an October 31, 2002 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order.
 {¶ 11} 7. On December 4, 2002, another SHO mailed an order refusing claimant's administrative appeal from the SHO's order of October 31, 2002.
 {¶ 12} 8. By December 13, 2002, claimant had moved his residence to Sebring, Florida. On December 13, 2002, claimant began part-time employment at Sebring International Raceway ("SIR"). Claimant was hired as a "corner man" earning $7.50 per hour.
 {¶ 13} 9. On May 23, 2003, claimant moved for nonworking wage loss compensation from September 30 through December 12, 2002, and for working wage loss compensation beginning December 13, 2002. In support of the motion, claimant submitted a C-140 report from Roger Arumugan, M.D., based upon an April 9, 2003 examination. In that report, Dr. Arumugan restricted claimant during an eight-hour day to two hours of sitting, two hours of standing, and two hours of walking. The restrictions were stated to be permanent.
 {¶ 14} 10. Claimant submitted job search records to support his request for nonworking wage loss compensation. However, claimant did not submit job search records to support his request for working wage loss compensation beginning December 13, 2002.
 {¶ 15} 11. Following a July 25, 2003 hearing, a DHO issued an order: (1) denying nonworking wage loss compensation from September 30 through October 31, 2002; (2) granting nonworking wage loss compensation from November 1 through December 12, 2002; and (3) denying working wage loss compensation beginning December 13, 2002.
 {¶ 16} The nonworking wage loss compensation from November 1 through December 12, 2002, was based upon the job search records showing 46 employer contacts in November and seven contacts in December.
 {¶ 17} The DHO explained his denial of working wage loss:
* * * [T]he claimant has not submitted proof of an ongoing job search for work that is comparable in pay to what he was making at the time of the allowed injury. Ohio Administrative Code 4125-1-01(D)(1)(c) requires those seeking wage loss who have not returned to comparably paying work to make an ongoing job search for such comparably paying work. The claimant made $45,000 the last year at his prior job per the C-140. He states on the C-140 that he only earns $7.50 per hour at this current job; $7.50 per hour over 40 hours, over 52 weeks, is much less than $45,000 per year. The claimant has submitted no evidence documenting any job search since he started working on 12/13/2002. For this reason[,] the request for working wage loss from 12/13/2002 to 07/25/2003 is denied.
 {¶ 18} 12. Claimant administratively appealed the DHO's order of July 25, 2003.
 {¶ 19} 13. Following a September 11, 2003 hearing, an SHO issued an order stating:
That portion of the District Hearing Officer order denying working wage loss 12/13/2002 onward is vacated. Staff Hearing Officer finds that a claimant restricted to 2 hours each of standing, sitting, and walking, not being able to use arm controls nor left foot controls, limited to (at best) to [sic] handling 20 lbs, with a high school education in auto mechanics wherein he got C's and D's in his academic subjects, who is dyslexic (according to Dr. Howard), whose concentration and attention are marginal (according to employer's Dr. Malinky), and whose work experience is limited to mechanics (30 years ago)[,] landscaper, parts store stockman, and truck driver (to which he cannot return) cannot realistically be expected to find work paying $45,000 per year.
Staff Hearing Officer finds that claimant has made, and continues to make a good faith job search effort to maximize his earnings given his restrictions. Accordingly[,] compensation for working wage loss from 12/13/2002 to date, and to continue is awarded.
 {¶ 20} 14. On October 16, 2003, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 11, 2003.
 {¶ 21} 15. The stipulated record contains 16 bi-weekly earnings statements from SIR. These statements uniformly show that claimant's hourly wage was $7.50. The statements show the total hours worked during the bi-weekly period as well as the gross wages earned during the period. Based on these SIR bi-weekly earnings statements, the following number of hours were worked by claimant during the following periods:
 Week Ending Hours Worked
 December 22, 2002 30
 January 2, 2003 16.5
 February 2, 2003 57.5
 February 16, 2003 25.5
 March 2, 2003 7.25
 March 15, 2003 25
 March 29, 2003 24
 April 12, 2003 34.75
 April 26, 2003 15.75
 May 10, 2003 31.50
 May 24, 2003 30.50
 June 7, 2003 15.50
 June 21, 2003 15.50
 July 5, 2003 7
 July 19, 2003 15.25
 August 2, 2003 8.25
 {¶ 22} From the SIR earnings statement for the period ending August 2, 2003, the average number of hours claimant worked per week during the year 2003 can be easily determined.
 {¶ 23} The earnings statement for the period ending August 2, 2003, shows year-to-date gross pay at $2,865.03 with a constant hourly pay rate of $7.50. There are 30 weeks in the period January 1 through August 2, 2003.
 {¶ 24} Thus, claimant's gross weekly pay during the year 2003 averaged $95.50 ($2,865.03 ÷ 30 weeks = $95.50 per week).
 {¶ 25} Claimant worked an average of 12.73 hours per week ($95.50 per week ÷ $7.50 = 12.73 hours per week).
 {¶ 26} Thus, based upon the earnings statements of record, claimant worked an average of 12.73 hours per week.
 {¶ 27} The magistrate notes that relator has overstated in this action the average number of hours claimant worked at SIR. Relator incorrectly states in its brief that claimant worked "in the neighborhood of twenty-five to thirty hours a week." (Relator's brief at 3.) Relator also states that claimant worked "approximately 24 hours per week." (Relator's brief at 6.)
 {¶ 28} The record contains documents that claimant submitted in support of his appeal of the DHO's order of July 25, 2003. The documents show that claimant obtained part-time employment with Crossmark Retail Services ("Crossmark") and was employed with Crossmark beginning the last half of July into August 2003. (Stipulated record at 117-123.)
 {¶ 29} Two pay stubs indicate that claimant earned $8.50 per hour at Crossmark. (Stipulated record at 107, 109.) Claimant worked 4.17 hours for the pay period ending August 3, 2003. He worked 7.67 hours for the pay period ending August 31, 2003.
 {¶ 30} 16. The record further shows that, effective August 12, 2003, claimant began part-time employment with Service Advantage at an hourly rate of $8.50. The position is described as a "Master e — Merchandiser." No pay stubs were submitted regarding the Service Advantage job.
 {¶ 31} 17. On January 5, 2004, relator, Cassens Transport Company, filed this mandamus action.
Conclusions of Law:
 {¶ 32} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 33} Ohio Adm. Code Chapter 4125-1 sets forth the commission's rules applicable to the adjudications of applications for wage loss compensation.
 {¶ 34} Ohio Adm. Code 4125-1-01(A) sets forth several definitions, two of which should be noted here. Ohio Adm. Code 4125-1-01(A)(7) states:
"Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
 {¶ 35} The other definition is found at Ohio Adm. Code 4125-1-01(A)(8), which states:
"Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 {¶ 36} Ohio Adm. Code 4125-1-01(D) states in part:
The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. * * *
In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:
(1) The claimant's search for suitable employment.
* * *
(c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking nonworking wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work * * *.
 {¶ 37} Ohio Adm. Code 4125-1-01(F) provides for a standard computation of wage loss and an alternative computation of wage loss where the claimant has voluntarily limited the number of hours he is working but is nevertheless entitled to wage loss compensation.
 {¶ 38} Ohio Adm. Code 4125-1-01(F) states in part:
Computation of wage loss
(1) Unless otherwise provided in paragraph (H)(3) of this rule, diminishment of wages shall be calculated based on the:
(a) Claimant's average weekly wage at the time of the injury or at the time of the disability due to occupational disease in accordance with the provisions of section 4123.61 of the Revised Code; and
(b) The claimant's present earnings.
* * *
[3](b) If the adjudicator finds that the claimant has returned to employment but has voluntarily limited the number of hours which he is working, and that the claimant is nonetheless entitled to wage loss compensation, the adjudicator, for each week of wage loss compensation requested by the claimant, shall determine: the number of hours worked by the claimant in the employment position to which he has returned, and the hourly wage earned by the claimant in the employment position to which he has returned. In such a case, the adjudicator shall order wage loss compensation to be paid at a rate of sixty-six and two-thirds per cent of the difference between:
(i) The weekly wage the claimant would have earned in the former position of employment if the claimant had worked only the number of hours the claimant actually worked each week in the employment position to which the claimant returned; and
(ii) The weekly amount the claimant actually earned in the employment position to which he returned.
 {¶ 39} For the typical worker, comparably paying work usually has two components: (1) the hourly rate of pay; and (2) the number of hours per week worked. That is, the weekly rate of pay for comparably paying work will ordinarily involve the hourly rate and the number of hours worked per week.
 {¶ 40} The SHO's order of September 11, 2003, again states in part:
* * * Staff Hearing Officer finds that a claimant restricted to 2 hours each of standing, sitting, and walking, not being able to use arm controls nor left foot controls, limited to (at best) to [sic] handling 20 lbs, with a high school education in auto mechanics wherein he got C's and D's in his academic subjects, who is dyslexic (according to Dr. Howard), whose concentration and attention are marginal (according to employer's Dr. Malinky), and whose work experience is limited to mechanics (30 years ago)[,] landscaper, parts store stockman, and truck driver (to which he cannot return) cannot realistically be expected to find work paying $45,000 per year.
 {¶ 41} In the magistrate's view, the above portion of the SHO's order provides the reasoning supported by some evidence to support a finding that claimant can no longer expect to earn at the hourly rate of pay he experienced as a driver — car hauler for Cassens.
 {¶ 42} However, the SHO's order fails to explain why claimant is limited by the industrial injury to part-time employment at approximately 12.73 hours per week.
 {¶ 43} Dr. Arumugan restricted claimant during an eight-hour day to two hours of sitting, two hours of standing, and two hours of walking. Dr. Arumugan's report can be read to indicate that claimant is restricted to no more than six hours of employment per day. Thus, claimant could work up to 30 hours during a five-day workweek or even more during a longer workweek.
 {¶ 44} It is clear from Dr. Arumugan's report that claimant worked many hours less at SIR than he was physically capable of working.
 {¶ 45} Given that claimant failed to produce job search documents for his working wage loss claim beginning December 13, 2002, it is clear that claimant voluntarily limited the number of hours per week that he worked.
 {¶ 46} Claimant's documentary evidence showing that he obtained additional part-time employment at Crossmark beginning July 2003 and at Service Advantage in August 2003, further shows that claimant was underemployed as to his hours beginning December 13, 2002.
 {¶ 47} Given that claimant voluntarily limited the number of hours that he was employed part-time at SIR, the commission abused its discretion by granting wage loss compensation based upon the standard formula.
 {¶ 48} However, claimant did not voluntarily limit his hourly wage during the hours that he actually worked part-time at SIR. Thus, the commission must use the alternative formula found at Ohio Adm. Code4125-1-01(F)(3)(b) to calculate the wage loss award.
 {¶ 49} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of September 11, 2003 and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the application for wage loss compensation.